IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROBIN HAFFNER,

                    Plaintiff,

     v.

JOSHUA BELL, MIKE MONTELLO,
NOAH WIEDENFELD,
THE CITY OF NEW RICHMOND, and
THE CITY OF NEW RICHMOND POLICE AND
FIRE COMMISSION,

                  Defendants.

OPINION and ORDER

22-cv-640-jdp

---

Plaintiff Robin Haffner was a firefighter with the New Richmond fire department for more than 30 years. He was assistant chief of the department for more than ten years. During the time Haffner served as a firefighter, the fire department operated relatively independently of city oversight, including in how it selected subordinate officers. The fire chief selected assistant chiefs directly, without the formal approval of the city's Police and Fire Commission. This process of selecting officers did not conform to state law.

When the long-time fire chief resigned, Haffner applied for the position of interim fire chief, but defendant Joshua Bell was selected instead. Around the same time, the city brought its officer selection practices into compliance with state law, and the city administrator, defendant Noah Wiedenfeld, authorized Bell to start fresh with a new slate of officers. Haffner was not among those whom Bell chose as new officers. From there, the relationship between Haffner and the city deteriorated. The city placed Haffner on administrative leave for removing two fire helmets from the fire department without permission. And while on leave, Haffner began driving to emergency response scenes to watch the firefighters, causing the city to get a

temporary restraining order against Haffner because his behavior made the firefighters uncomfortable.

Haffner raises multiple constitutional claims against the city and the individual defendants: Bell, Wiedenfeld, and city councilman and former Police and Fire Commission member Mike Montello. He contends that defendants (1) violated his right to due process under the Fourteenth Amendment by demoting him from his assistant chief position without providing him any procedural protections; (2) violated his First Amendment rights by retaliating against him for speaking out about the lack of qualified management at the fire department; (3) violated his right to familial association under the Fourteenth Amendment by failing to hire him as assistant chief because his sons also served in the fire department; and (4) violated his right to travel under the Fourteenth Amendment and the Wisconsin Constitution by obtaining a restraining order that prevented him from visiting emergency response scenes.

Defendants move for summary judgment on all of Haffner's claims, contending both that the claims fail as a matter of law and that the individual defendants are entitled to qualified immunity. The court will grant summary judgment to defendants on Haffner's First Amendment, familial association, and right to travel claims, for reasons explained in this opinion. The court will also grant summary judgment to the individual defendants based on qualified immunity on Haffner's due process claim, because the unlawfulness of defendants' actions was not clearly established when they demoted Haffner from his assistant chief position. But the court will deny summary judgment to the municipal defendants on Haffner's due process claim, because Haffner had a property interest in his assistant chief position under Wisconsin law even if the city did not follow the law when it appointed him to that position.

UNDISPUTED FACTS

Historically, the City of New Richmond fire chief selected assistant chiefs and other subordinate officers without seeking approval from the Police and Fire Commission, a process that did not comply with Wisconsin law. Wis. Stat. § 62.13(4)(a) establishes requirements for the appointment of subordinate officers in police and fire departments, and § 62.13(5) affords police officers and firefighters protections against wrongful discharge.

Plaintiff Robin Haffner was a part-time firefighter in New Richmond for more than 30 years. He was appointed an assistant chief by the long-time fire chief, Jim VanderWyst, and served in that role for more than ten years. Haffner received a stipend for serving as an assistant chief.

## A.  Interim fire chief hiring

In 2021, Chief VanderWyst resigned after facing disciplinary charges from the city, creating a vacancy for the top position at the fire department. Haffner believed that the fire department bylaws made him acting chief in VanderWyst's absence. But the city instead put Mayor Fred Horne, a former firefighter, in charge of day-to-day operations at the department until a new interim chief was hired. Haffner complained to city administrator Noah Wiedenfeld, city councilman and Police and Fire Commission member Mike Montello, and other firefighters about Horne running the fire department, expressing his opinion that Horne was unqualified, that the city was corrupt for ignoring the chain of leadership listed in the fire department's bylaws, and that Haffner should be running the department instead.

In the summer of 2021, the city opened applications for the position of interim fire chief. Haffner applied for the position. While the city was accepting applications, certain firefighters began distributing a petition supporting Haffner for interim chief. The parties

3

dispute whether Haffner encouraged firefighters to sign the petition. Wiedenfeld found out about the petition and issued a written disciplinary action to Haffner for failing to intervene as a department leader to discourage or stop the petition, when Haffner knew the petition was causing division within the department. Haffner alleges that Montello used the disciplinary action to sabotage Haffner's candidacy for the interim chief position by telling the Police and Fire Commission members responsible for hiring the interim chief that Haffner was under disciplinary investigation. One of the commissioners, Wendy Dadez, recalled Montello telling the commission that Haffner was under investigation; none of the other commissioners remembered hearing this.

The Police and Fire Commission selected four finalists to interview for the interim chief position, including Haffner and Joshua Bell. Four commissioners participated in the interviews: Dadez, Bob Olson, Jane Hansen, and Jon Hailey. The fifth commissioner, Montello, resigned shortly before the interviews. Hansen recalls Montello telling the commission before he resigned that they could hire "anyone but a Haffner" for the position. Hansen wasn't sure whether any other commissioners heard this comment, and the other commissioners denied hearing it. Except for Hansen hearing this comment, none of the commissioners reported Wiedenfeld or Montello expressing any opinion about who they should hire as interim chief.

The commissioners scored the interviewees on a set of fourteen questions. One of the questions was about how the candidates would comply with the city's nepotism policy—Haffner alleges that Wiedenfeld inserted the nepotism question into the interviews to sway the commission against Haffner, whose two sons also worked as firefighters. None of the commissioners disqualified Haffner from consideration on the basis of the nepotism question. Three of the four commissioners scored Haffner higher than Bell after the interviews, though

the overall scores were close. Three of the commissioners thought both candidates were qualified; Hansen thought Bell was unqualified.

At the conclusion of interviews, the commissioners went into closed session, where the initial vote was a tie between Haffner and Bell. After discussion, the four commissioners unanimously agreed to hire Bell as interim fire chief. Dadez voted for Bell because he "seemed to have more . . . experience with management of groups of people and a clear vision of bringing the fire department into a less disruptive state." Dkt. 29 (Dadez Dep. 25:1–7). Hailey voted for Bell because he "thought his leadership skills would help transform the Fire Department from an insular clique hostile to the City with its own way of doing things, into a well-functioning City department." Dkt. 25, ¶ 11. Olson didn't provide his personal reasons for voting for Bell, but he stated that there was a "lot of discussion" among the commissioners "as to having someone . . . fairly new on the department to be on there." Dkt. 33 (Olson Dep. 34:20–25). Hansen, who continued to favor Haffner, voted for Bell so the commission could have consensus. Dkt. 31 (Hansen Dep. 36:18–24). None of the commissioners reported that Haffner being under investigation, or that Montello's comment about not hiring a Haffner influenced their decision, except for Hansen, who stated that Montello's comment may have "subconsciously" influenced her decision. Dkt. 31 (Hansen Dep. 17:1–5).

## B. Demotion from assistant chief

Shortly after Bell was hired as interim fire chief, the city amended its ordinance governing fire department officer selection to comply with state law. The new ordinance gave the fire chief the authority to appoint officers—subject to confirmation by the Police and Fire Commission. In accordance with the new ordinance, Bell appointed a slate of officers, and the Police and Fire Commission approved those officers at its next meeting. Bell did not appoint

Haffner to an officer position, meaning that Haffner was no longer the assistant chief, but he remained a regular firefighter.

## C. Alleged theft, administrative leave, and temporary restraining order

In August 2021, within days of Haffner's demotion from assistant chief to regular firefighter, Bell reported to Wiedenfeld that a white helmet was missing. White helmets are worn by chiefs and assistant chiefs. Bell and Wiedenfeld reviewed fire station security footage, which showed Haffner taking a white helmet off city property. After reviewing the footage, Bell contacted Haffner and asked him where his helmet was; Haffner said he had turned it in to the department. Wiedenfeld contacted police, who turned the investigation over to an independent law enforcement agency. On September 1, Haffner was interviewed by a detective and admitted to taking two white helmets—the one he had worn when he was an assistant chief and the one VanderWyst had worn when he was chief. Haffner alleges that Bell told him he could keep VanderWyst's helmet, and that he had taken his own former helmet accidentally because he had been distraught about being demoted. Haffner voluntarily returned both helmets to the department.

On August 31, 2021, the day before he was interviewed by law enforcement about the missing helmets, Haffner wrote a letter to Mayor Horne and Wiedenfeld to complain about Bell's selection as interim fire chief. In the letter, Haffner expressed his view that Bell did not meet the minimum qualifications for the interim fire chief position and stated that he "hope[d] this situation is addressed and a minimally qualified chief be appointed before the Department gets sued as a result of decisions made by an unqualified chief." Dkt. 41-10.

In September 2021, the city initiated an internal employment investigation against Haffner because of the alleged theft of the fire helmets. The city placed Haffner on

6

administrative leave pending the results of the investigation. On November 17, 2021, Bell informed Haffner that city investigators had found multiple violations of city policies and that Bell intended to file charges with the Police and Fire Commission seeking Haffner's termination. Dkt. 41-14. Bell did file charges with the commission, which held an evidentiary hearing, but the parties do not say what the results of the commission proceedings were. The St. Croix County District Attorney's Office also brought criminal theft charges against Haffner for stealing the fire helmets. Haffner was acquitted of these charges by a jury.

Haffner continued speaking out about Bell's qualifications and leadership of the fire department. On November 17, 2021, Haffner signed on to a group letter to the Police and Fire Commission from the "New Richmond Concerned Firefighters," expressing concerns about Bell's qualifications, the qualifications of other command staff at the fire department, and the "hostile and toxic" work environment that Bell had created within the department. Dkt. 41-13. And on February 1, 2022, Haffner submitted a complaint to the Wisconsin Department of Safety and Professional Services, alleging that Bell created a hostile work environment and violated safety standards at fire scenes. Dkt. 41-15. Haffner alludes in his proposed facts to several other instances where he complained about Bell and the fire department, including that he attended several city board meetings, but he doesn't describe the timing or content of these instances of speech.

While on administrative leave, Haffner drove to active fire response scenes and to the fire station on several occasions to watch the firefighters work. Wiedenfeld and Bell received complaints from several firefighters, who said that Haffner's behavior made them uncomfortable and disrupted their work. On April 29, 2022, the city sent a cease-and-desist letter to Haffner's attorney, Dkt. 27-11, and on November 18, 2022, the city filed a petition

for a temporary restraining order against Haffner to prevent him from visiting the fire station or any active fire response scenes. Dkt. 27-12. The temporary restraining order was lifted after an injunction hearing because the judge found that Haffner was not making threats or otherwise disrupting the firefighters.

ANALYSIS

Defendants contend that each of Haffner's constitutional claims fails as a matter of law. Alternatively, they contend that each of the individual defendants is shielded by qualified immunity. The court will address each of Haffner's constitutional claims in turn.

**A.  Due process**

Haffner asserts a claim under the Fourteenth Amendment Due Process Clause, contending that defendants deprived him of a property interest without due process of law when they demoted him from his position as the assistant fire chief. The court will first address the merits of Haffner's due process claim, and then will address whether the individual defendants are entitled to qualified immunity.

**1.  Merits of due process claim**

To prevail on a procedural due process claim for deprivation of property, Haffner must demonstrate that he: (1) had a cognizable property interest; (2) suffered a deprivation of that interest; and (3) did not receive the process he was due. *Dixon v. City of New Richmond*, 334 F.3d 691 (7th Cir. 2003).

Defendants contend that Haffner did not have a property interest in his position, and, in any case, he received all the process he was due. Defendants' reasoning is that Haffner was not entitled to any employment protections under Wisconsin law, because the city violated the

law by appointing him assistant chief without seeking Police and Fire Commission approval. This court has already rejected defendants' contention that an officer who was not legally appointed under state law cannot have a property interest in his position. *Haffner v. Bell*, No. 22-cv-639-jdp, 2024 WL 1194105 (W.D. Wis. Mar. 20, 2024) [*Haffner I*]. The plaintiff in *Haffner I* was Haffner's son Richard Haffner. Like his father, Richard held officer positions with the New Richmond Fire Department that had not been formally approved by the Police and Fire Commission. The court held that Wis. Stat. § 62.13(5) provides fire department officers with property interests in their position regardless of whether the city complied with the law when it selected those officers in the first place. *Id.* at *3.

This court in *Haffner I* also rejected defendants' contention that Richard received all the process he was due—which like this case, was no process at all. *Id.* at *3–*4. An individual deprived of a property interest is at least entitled to "some kind of hearing." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). Holding no hearing at all plainly fails that standard. *Haffner*, 2024 WL 1194105, at *4.

The facts of this case as they pertain to the due process claim are nearly identical to those in *Haffner I*. If anything, Robin Haffner has a stronger case that he held a property interest in his position. In *Haffner I*, defendants contended that Richard's officer position was a meaningless unofficial title rather than a true position, in large part because it came with no increase in base pay. *Id.* at *3. But defendants do not contend that here, because they admit that Robin Haffner received a stipend for serving as assistant chief. Dkt. 46, ¶ 43. The court will deny summary judgment on Robin Haffner's due process claim for the reasons explained in *Haffner I*.

### 2. Qualified immunity

Haffner is suing Wiedenfeld, Montello, and Bell under 42 U.S.C. § 1983 in their individual capacities. The defendants contend that these individual defendants are shielded by qualified immunity.

Qualified immunity affords broad protection to government officials who make good-faith mistakes in the performance of their duties. Qualified immunity shields government officials from individual liability under 42 U.S.C. § 1983 unless two elements are met: (1) the official violated a federal statutory or constitutional right, and (2) the unlawfulness of the official's conduct was clearly established at the time of the violation. *Bradley v. Vill. of Univ. Park, Illinois*, 59 F.4th 887 (7th Cir. 2023) (citing *D.C. v. Wesby*, 583 U.S. 48, 62–63 (2018)).

A legal violation is clearly established if there is a strong foundation of legal precedent plainly prohibiting the official's conduct, such that a reasonable official would understand that what he is doing is unlawful. *Bradley*, 59 F.4th at 589–90. The plaintiff bears the burden of defeating qualified immunity. It is not enough for a plaintiff to point to a general legal principle: he must show that the principle is clearly applicable under the specific factual circumstances at issue. *Mullenix v. Luna*, 577 U.S. 7 (2015). Typically, a plaintiff makes this showing by pointing to case law that applies the legal principle to a similar set of facts. *Boyd v. Owen*, 481 F.3d 520, 526 (7th Cir. 2007).

Haffner provides no case law applying the principles of due process law to a factual scenario even remotely like this one. Haffner asserts only that "[b]y the summer of 2021, it was clearly established that . . . due process was required if a fire officer were to be demoted." Dkt. 36, at 17. It is well established that firefighters hold property interests in their positions and that they may not be demoted without due process. Wis. Stat. § 63.15(5); *Dixon*, 334 F.3d

at 694; *Kraus v. City of Waukesha Police & Fire Comm'n*, 2003 WI 51, ¶ 57, 261 Wis. 2d 485, 662 N.W.2d 294. But this is far too general a principle to establish that Haffner's rights were clearly established. The defendants were presented with an unusual set of facts—New Richmond had a longstanding practice of unlawful hiring practices and changed its policy to conform with the law. Under those circumstances, it was not clearly established to the individual defendants that it would be unlawful to assume that Bell had a clean slate and could appoint whomever he thought was best to the officer positions.

## B.  First Amendment retaliation

The First Amendment prevents a government employer from retaliating against an employee for speaking as a citizen on matters of public interest. *Diadenko v. Folino*, 741 F.3d 751 (7th Cir. 2013). A claim for First Amendment retaliation has three elements: (1) that the employee engaged in constitutionally protected speech; (2) that he suffered a deprivation because of his employer's action; and (3) that his protected speech was a but-for cause of his employer's action. *Milliman v. Cnty. of McHenry*, 893 F.3d 422 (7th Cir. 2018)

Haffner contends in his brief that he engaged in protected speech because he "complained about public safety and public corruption at several points." Dkt. 36, at 12. He doesn't affirmatively state in his brief what instances of speech he is referring to, but from his proposed facts, the court infers that he is referring to his complaints in the spring of 2021 about the city's treatment of Chief VanderWyst, to his complaints in the spring and summer of 2021 about Mayor Horne running the fire department while Chief VanderWyst was on administrative leave, and to his complaints on August 31, 2021, November 17, 2021, and February 1, 2022, about Bell's qualifications to be fire chief and about Bell's leadership of the fire department. Dkt. 46, ¶¶ 48–49, 52–53, 122–123, 151, 177.

Defendants base their motion for summary judgment on two theories: first, that these instances of speech were not protected; and second, that any protected speech was not a but-for cause of the adverse actions that the defendants took against Haffner. The court need not decide whether Haffner's speech was protected because it agrees with defendants' second theory. Even if Haffner's speech was protected, Haffner has not adduced evidence that his speech was a but-for cause of the adverse actions he experienced.

The but-for causation element of a First Amendment retaliation claim has a split burden of proof. Haffner has the initial burden: to establish a prima facie case of retaliation, he must show that his protected speech was a motivating factor in the adverse action taken against him. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). Haffner's evidence can be direct or circumstantial. *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 586 (7th Cir. 2021). Examples of circumstantial evidence include suspiciously close timing between the speech and the adverse action, procedural irregularities, changing explanations for an adverse action, or different treatment of similarly situated people. *Kidwell v. Eisenhauer*, 679 F.3d 957, 965–66 (7th Cir. 2012). At summary judgment, the court must draw all reasonable inferences in Haffner's favor. *Hobgood v. Illinois Gaming Bd.*, 731 F.3d 635 (7th Cir. 2013). But Haffner must provide enough evidence to make his contention of retaliatory motive more than speculative. *Id.* at 644.

If Haffner meets his burden of showing a retaliatory motive, then the burden shifts to the defendants to show that they would have taken the same action even if Haffner had not engaged in the protected speech. *Mt Healthy*, 429 U.S. at 287. The persuasiveness of the defendants' case is ordinarily a question for the jury, but the court can decide the issue at

summary judgment if, drawing all inferences in Haffner's favor, it finds that a reasonable jury would be compelled to credit defendants' position. *Milliman*, 893 F.3d at 431.

Haffner identifies four allegedly retaliatory actions that defendants took against him: (1) failing to hire him for the interim fire chief position; (2) demoting him from the assistant fire chief position; (3) placing him on administrative leave and bringing criminal and disciplinary charges; and (4) seeking a temporary restraining order against him. The court will address each in turn.

### 1.  Interim fire chief position

The Police and Fire Commission interviewed four candidates for interim fire chief, ultimately choosing Bell over Haffner. Four commissioners participated in the hiring process: Wendy Dadez, Jane Hansen, Bob Olson, and Jon Hailey. Haffner does not contend that the commissioners knew about any protected speech; rather, he relies on a "cat's paw" theory, contending that Montello and Wiedenfeld poisoned the commissioners against him. To show retaliatory motive under a cat's paw theory, Haffner must adduce evidence that Montello and Wiedenfeld decisively influenced the commission, so that without their actions, the commission would have hired Haffner as interim chief. *See Taylor v. Ways*, 999 F.3d 478, 488 (7th Cir. 2021).

Haffner identifies three actions that he contends decisively influenced the commission. First, he alleges that Wiedenfeld concocted baseless disciplinary proceedings against him for his failure to prevent other firefighters from signing a petition in support of Haffner's candidacy, and that Montello then informed the commissioners that Haffner was under disciplinary investigation. Second, he alleges that Montello told the commission that they could hire "anyone but a Haffner" for the position. And third, he alleges that Wiedenfeld

inserted a question about nepotism into the interview process to sway the commission against Haffner, whose two sons were also firefighters in the department.

Even assuming that Montello and Wiedenfeld took these actions for retaliatory reasons, Haffner has not adduced evidence sufficient for a reasonable jury to find that the commission was decisively influenced by those actions. Haffner's only evidence connecting the commission's hiring decision to Wiedenfeld and Montello's actions is Hansen's statement that she may have been "subconsciously" influenced by Montello's comment that they could hire anyone but a Haffner. Dkt. 46, ¶ 93. But this one piece of evidence is insufficient for a jury to find a decisive influence, because even if Hansen changed her vote because of Montello's comment, the other three commissioners also voted for Bell, so Hansen's vote didn't make a difference.

Haffner also fails to provide circumstantial evidence sufficient to allow a jury to find influence. Haffner relies on the contention that Bell was less qualified than he was, so the commission must have been influenced to have chosen Bell over him. Courts are wary of retaliation claims based on comparing candidates' qualifications. The court's job is not to act as a "super personnel department" reviewing the wisdom of hiring decisions. *Milbrook v. IBP, Inc.*, 280 F.3d 1169, 1181 (7th Cir. 2002). Evidence of superior qualifications supports a finding of retaliation only if the qualifications are so lopsided that no reasonable person exercising impartial judgment could have chosen Bell. *See id.*

A comparison of Haffner's and Bell's qualifications falls short of that standard. Haffner had a longer tenure as a firefighter than Bell and had technical qualifications that Bell did not. But Haffner and Bell were both experienced firefighters. And at least one of the commissioners, Dadez, thought Bell was more experienced as a manager. Dkt. 37, ¶ 73. Haffner provides his

14

own opinion that he was the more qualified candidate, but a candidate's own opinion is not a material fact that supports a contention of superior qualifications. *Id.* Haffner also provides evidence that Hansen thought Bell was unqualified, Dkt. 46, ¶ 90, but Hansen's opinion doesn't support any inference about the commission's opinion as a whole.

Haffner's main reason for why a jury could find lopsided qualifications is that Bell lacked the minimum qualifications for the position. According to Haffner, Bell wasn't certified as a Fire Officer I and did not have five years of experience as a fire inspector, both of which were required for the interim chief position. This argument fails for two reasons. First, Haffner's own evidence doesn't support a finding that Bell lacked the minimum qualifications—the job description he provides lists Fire Officer I certification as one of two alternative qualifications, and it doesn't list a fire inspector requirement at all. Dkt. 41-4. The evidence Haffner points to for that requirement is the qualifications for the permanent fire chief position, not the interim chief position. Dkt. 41-6. Defendants don't clarify whether or not Bell met the minimum qualifications, but Haffner has the burden of proof, and his evidence is insufficient to establish that Bell lacked those qualifications. Second, even if Bell lacked the minimum qualifications, no reasonable jury could infer from that fact alone that the commission's hiring decision was influenced by Wiedenfeld and Montello's retaliatory actions. Haffner would need additional evidence, such as proof that Wiedenfeld and Montello knew Bell was unqualified and lied to the commission, to connect the issue of Bell's qualifications to defendants' alleged retaliation. The bottom line is that Haffner has failed to adduce evidence from which a reasonable jury could find that Montello and Wiedenfeld exerted decisive influence on the commission.

### 2. Demotion from assistant fire chief position

When Bell took over as assistant fire chief, Wiedenfeld informed him that he could freely select subordinate officers subject to Police and Fire Commission approval. When Bell appointed a new slate of officers, he replaced Haffner as assistant chief, demoting him to a regular firefighter position.

Haffner has not adduced evidence that Bell demoted Haffner because of his protected speech. To the contrary, one of Haffner's own proposed facts is that "Bell did not consider Robin for an assistant chief position because of the flaws Bell had observed over the years: he did not feel Robin was fit to lead the department." Dkt. 46, ¶ 118. The "flaws" that Haffner refers to cannot be related to Haffner's alleged protected speech, because that speech hadn't been happening for years; it began in spring 2021 when Haffner first spoke out about the city's treatment of Chief VanderWyst. Haffner's admission that Bell had a non-retaliatory reason to demote him precludes a finding of retaliation.

### 3. Administrative leave; criminal and disciplinary charges

Defendants took several actions in response to Haffner's alleged theft of two fire helmets. They called the police, which resulted in a law enforcement investigation and criminal charges. They also initiated an internal investigation, placed Haffner on administrative leave, and brought disciplinary charges against him before the Police and Fire Commission.

Haffner's sole contention for why these actions were retaliatory is that defendants "concocted" the allegations of theft against him. Dkt. 36, at 14. Haffner proposes two facts in support of this contention: first, that Bell told Haffner that he could take one of the helmets, and second, that Haffner did not intend to steal the other helmet; he merely forgot that he had taken it home. Dkt. 46, ¶¶ 134, 136. But no reasonable jury could find from these proposed

16

facts that defendants concocted their allegations of theft. Even if they are true, defendants still had reason to believe that Haffner stole one helmet. Maybe defendants had a retaliatory motive—but it's Haffner's burden to provide evidence of that. *Mt. Healthy*, 429 U.S. at 287.

*Zellner v. Herrick* is on point. 639 F.3d 371 (7th Cir. 2011). In that case, the Seventh Circuit rejected a claim of First Amendment retaliation from a school district employee who had engaged in protected speech but had also violated school district policy. *Id.* at 379. The court held that no reasonable jury could find for the employee because he had provided no evidence that the district terminated him because of his speech and not the policy violation, such as evidence that the district treated others who violated the same policy differently. *Id.*

So it is here. The undisputed evidence is that Haffner violated city policy by removing at least one fire helmet from city premises without permission. Haffner has provided no evidence that others who committed similar offenses were treated differently, that the city deviated from established disciplinary procedures, or anything else to suggest that defendants' actions were the result of his speech rather than the alleged theft. Without some evidence, no reasonable jury could find that defendants' actions were retaliatory.

### 4. Temporary restraining order

While Haffner was on administrative leave, he began driving to active fire response scenes and watching the firefighters. After fruitlessly asking Haffner to stop, the city sought a temporary restraining order to prevent Haffner from driving to, parking near, or visiting any active fire response scenes unless he was there in his official capacity as an employee of the city ambulance service. Haffner contends that the temporary restraining order was a further adverse action that defendants took in retaliation for Haffner's protected speech.

Haffner supports his contention of retaliatory motive three ways. First, he argues that the timing was suspicious, because defendants sought the restraining order shortly after Haffner filed a complaint with the Wisconsin Department of Safety and Professional Services. Suspicious timing is circumstantial evidence of retaliation, but "the time period between the protected activity and the adverse action must be very close," typically days, rather than weeks or months. *Kingman v. Frederickson*, 40 F.4th 597 (7th Cir. 2022) (quoting *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012)). The copy of the administrative complaint that Haffner provides is dated February 1, 2022. Dkt. 41-15. The defendants did not send Haffner a cease-and-desist letter related to his visiting active fire scenes until almost three months later, on April 29, 2022, and did not file the temporary restraining order until November 29, 2022. Three months is too long a gap to support an inference of retaliation in the absence of other evidence connecting these events. *See id.* (rejecting evidence of a similar gap).

Second, Haffner argues that a judge found the restraining order baseless and lifted it, so defendants' motive for seeking the restraining order must have been retaliatory. But a judge finding the restraining order legally baseless isn't evidence that defendants lacked a non-retaliatory reason to seek the restraining order in the first place. In fact, Haffner admits that defendants did have such a reason: firefighters complained to the city about Haffner showing up at active fire scenes. Dkt. 37, ¶¶ 109, 110. Haffner provides no evidence that would allow a reasonable jury to infer that the defendants acted out of retaliation rather than in response to these third-party complaints.

Third, Haffner argues that the reasons for defendants' restraining order were baseless because defendants knew that Haffner drove an ambulance, so he had a legitimate reason to be at emergency response scenes. But the restraining order specifically allowed Haffner to be

18

at emergency response scenes in his official capacity as an ambulance driver, so this is irrelevant to his contention of retaliatory motive. Dkt. 27-12.

## C. Familial association

The Due Process Clause of the Fourteenth Amendment includes certain protections for family relationships, most significantly the right of individuals to marry the person of their choice and the right of parents to have custody of their minor children. *See Zablocki v. Redhail*, 434 U.S. 374 (1978); *Bergren v. City of Milwaukee*, 811 F.2d 1139, 1144 (7th Cir. 1987). Haffner contends that the defendants violated his right to familial association when they included a question about nepotism in the interim chief interviews and when Montello referred to Haffner being the father of two other firefighters as a reason not to hire him as chief.

Even if the city chose not to hire Haffner as the interim fire chief because he was the father of two firefighters, that wouldn't violate Haffner's Fourteenth Amendment right to familial association. Governments can impose "reasonable regulations" on family relationships as long as they do not "significantly interfere" with those relationships. *Zablocki*, 434 U.S. at 386. Courts have upheld anti-nepotism policies as one such reasonable regulation, because they impose no more than an incidental burden on the family and they advance the legitimate purpose of promoting the efficiency of governmental operations. *See Sullivan v. Wessel*, No. 19-C-778, 2020 WL 1862976, at *3 (E.D. Wis. Apr. 14, 2020); *Parks v. City of Warner Robins, Ga.*, 43 F.3d 609, 614 (11th Cir. 1995). Asking Haffner how he planned to comply with the city's nepotism policy is a reasonable action from the city that does not violate Haffner's Fourteenth Amendment rights.

**D. Right to travel**

Haffner contends that defendants' temporary restraining order violated his rights under the Wisconsin and federal constitutions because "[h]e was arbitrarily restricted from traveling in the proximity of fire call scenes or even the fire department." Dkt. 36, at 16. The Wisconsin Supreme Court has recognized a right to intrastate travel under the Wisconsin Constitution. *Brandmiller v. Arreola*, 199 Wis. 2d 528, 544 N.W.2d 894 (1996). The U.S. Constitution protects the right to interstate travel, but it remains an open question in the Seventh Circuit whether it also protects the right to intrastate travel. *Hannemann v. S. Door Cnty. Sch. Dist.*, 673 F.3d 746 (7th Cir. 2012).

Regardless, Haffner's right to travel claim fails because Haffner has not established that the temporary restraining order actually restricted his right to intrastate travel. The right to intrastate travel is not a right to go anywhere and everywhere at pleasure; it is a right to "move freely about one's neighborhood or town." *Brandmiller*, 199 Wis. 2d at 547. A restriction that prevents someone from being in a certain place but that doesn't meaningfully restrict someone's right to move around town doesn't restrict the right to travel. In *Hannemann*, for example, the Seventh Circuit rejected a right to travel claim from a student who was banned from school grounds because the student "ha[d] not alleged that the only way to get from one location to another is to traverse school property, nor ha[d] he alleged that the ban prevent[ed] him from accessing substantial portions of the county." *Id.* at 756.

The temporary restraining order restricted Haffner's right to be at active fire response scenes and at the fire station, but Haffner has provided no evidence that those restrictions prevented him from traveling around town. Haffner argues in his brief that New Richmond is a small community, so Haffner would be in jeopardy of violating the restraining order if he

traveled at all. Dkt. 36, at 16. But this argument strains credulity. Unless New Richmond suffered from an unusual number of fires, Haffner would have had little difficulty traveling around the fire station and active response scenes to get wherever he needed to go.

## CONCLUSION

Haffner's due process claim against the city and the commission based on his demotion from the position of assistant chief will have to be decided by a jury. The defendants' motion for summary judgment will be granted in all other respects.

## ORDER

IT IS ORDERED that:

1. Defendants motion for summary judgment, Dkt. 22, is DENIED with respect to Haffner's due process claim against the City of New Richmond and the City of New Richmond Police and Fire Commission. Defendants' motion is GRANTED in all other respects.

2. Defendants Mike Montello, Noah Wiedenfeld, and Joshua Bell are DISMISSED from the case.

Entered April 10, 2024.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge